**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

SELECTIVE INSURANCE )
COMPANY, In its own right and )
alternatively as a subrogee of RITA )
GEKHT, )
                                   )
            Plaintiff, )
                                   )
    v. )     C.A. NO.: N17C-08-325 AML
                                   )
PHILADELPHIA INDEMNITY )     JURY TRIAL OF 12 DEMANDED
INSURANCE COMPANY d/b/a )
DELAWARE AUTOMOBILE )
INSURANCE PLAN, )
                                   )
            Defendants. )

Submitted: February 21, 2018
Decided: May 15, 2018

**ORDER**

**Defendant Philadelphia Indemnity Insurance Company's Motion to Dismiss: Granted**

1.    This case arose after Plaintiff paid Rita Gekht workers' compensation benefits following a work-related automobile accident in Delaware. Defendant insures the employer of Valerie McKeever, the other driver in the accident. In a personal injury action arising from the accident, Gekht settled her claim against McKeever for $75,000. The settlement agreement provided $30,000 to Plaintiff in full satisfaction of its workers' compensation lien, but expressly reserved

Plaintiff's right to pursue PIP subrogation or workers' compensation subrogation for PIP-eligible benefits.

2. Plaintiff now brings a workers' compensation subrogation claim against Defendant under 19 *Del. C.* § 2363 for PIP-eligible benefits. Plaintiff's insurance policy with Gekht's employer is governed by Pennsylvania's Workers' Compensation Act and Gekht's workers' compensation benefits were paid under the Pennsylvania Act. Defendant moved to dismiss Plaintiff's claim, arguing Pennsylvania law applies and governs Plaintiff's subrogation rights. The issue raised by Defendant's motion is whether Pennsylvania law, where the workers' compensation claim arose, or Delaware law, where the motor vehicle accident occurred, governs the parties' subrogation dispute. I find, based on the facts presently alleged in the complaint, that conflict of law principles dictate Pennsylvania law applies to Plaintiff's subrogation claim. My reasoning follows.

**BACKGROUND**

3. The following facts, and all permissible inferences, are drawn from the complaint and are assumed true for purposes of this motion. On August 28, 2015, Rita Gekht was operating a vehicle within the scope of her employment with Max & Me Inc. While driving southbound on Route 896 in Delaware, Gekht's vehicle was struck by Valerie McKeever's vehicle, causing Gekht personal injury.

2

4. At the time of the accident, McKeever was working within the scope of her employment with Advoserve Group Homes ("Advoserve"). At all relevant times, Plaintiff Selective Insurance ("Selective") insured Max & Me Inc., while Defendant Philadelphia Indemnity Insurance Company ("Philadelphia") insured Advoserve. As a result of the accident in August, Selective paid Gekht workers' compensation benefits totaling $43,642.12.[1]

5. Gekht filed a separate action in Delaware against McKeever for negligently causing the accident. On May 22, 2017, Gekht settled her action against McKeever for $75,000. According to the terms of the settlement agreement, Selective agreed to accept $30,000 in full satisfaction of its workers' compensation lien. The settlement did not, however, limit any workers' compensation subrogation claim for PIP-eligible benefits. The settlement agreement provides, in relevant part: "[t]his settlement does not limit or prohibit any PIP subrogation or workers['] comp subrogation claim for any PIP[-]eligible benefits."[2]

6. On August 28, 2017, Selective brought this action under 19 *Del. C.* § 2363, seeking reimbursement for all PIP-eligible benefits from Philadelphia as the third-party liability insurer. On November 13, 2017, Philadelphia filed this motion to dismiss.

---

[1] $14,541.52 in medical expenses and $29,100.60 in indemnity benefits. Compl. 4.
[2] Ex. A to Compl.

3

7.  Philadelphia argues Selective has no claim under 19 *Del. C.* § 2363 because choice of law principles dictate Pennsylvania's Workers' Compensation Act applies. Selective argues the motion is premature because Selective has pleaded factual allegations sufficient to put Philadelphia on notice of Selective's claim. In the alternative, Selective argues promissory estoppel should apply to keep Philadelphia from denying its subrogation rights provided under the settlement agreement.

**ANALYSIS**

8.  On a motion to dismiss, the Court must determine whether the "plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof."[3] "If [the plaintiff] may recover, the motion must be denied."[4] A court may grant the motion if "it appears to a reasonable certainty that under no state of facts which could be proved to support the claim asserted would plaintiff be entitled to relief."[5] When applying this standard, the Court will accept as true all non-conclusory, well-pleaded allegations.[6] In addition, "a trial court

---

[3] *Holmes v. D'Elia*, 129 A.3d 881 (Del. 2015) (citing *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978)).
[4] *Deuley v. DynCorp Int'l, Inc.*, 2010 WL 704895, at *3 (Del. Super. Feb. 26, 2010) (citing *Parlin v. DynCorp Int'l, Inc.*, 2009 WL 3636756, at *1 (Del. Super. Sept. 30, 2009) (quoting *Spence*, 396 A.2d at 968)), *aff'd*, 8 A.3d 1156 (Del. 2010).
[5] *Fish Eng'g Corp. v. Hutchinson*, 162 A.2d 722, 724 (Del. 1960) (citing *Danby v. Osteopathic Hosp. Ass'n of Del.*, 101 A.2d 308, 315 (Del. Ch. 1953), *aff'd*, 104 A.2d 903 (Del. 1954)); *Nero v. Littleton*, 1998 WL 229526, at *3 (Del. Ch. Apr. 30, 1998).
[6] *Pfeffer v. Redstone*, 965 A.2d 676, 683 (Del. 2009).

must draw all reasonable factual inferences in favor of the party opposing the motion."[7]

## A. Based on the facts alleged in the complaint, choice of law principles dictate Pennsylvania law applies to this case.

9. The single count alleged in Selective's complaint is one for subrogation for PIP-eligible benefits under Section 2363. Philadelphia argues Pennsylvania law governs Selective's subrogation rights, and therefore Selective has no cognizable claim under the Delaware statute. Philadelphia contends that Pennsylvania law has the most significant contacts with the dispute because Selective's workers' compensation policy with Max & Me Inc. is governed by Pennsylvania's Workers' Compensation Act.

10. Delaware's choice of law analysis follows the "most significant relationship" test from the Restatement (Second) of Conflict of Laws Section 6.[8] Under this test, the governing law is that of the state with the most significant relationship to the parties and the occurrence based on the principles listed in Section 6.[9] Section 6 provides the following seven factors that the Court must consider in conducting a choice of law inquiry:

---

[7] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005) (citing *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998) (citing *Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 38 (Del. 1996)) (other citations omitted)).

[8] RESTATEMENT (SECOND) OF CONFLICT OF LAWS 145(1) (AM. LAW INST. 1971); *see State Farm Mut. Auto. Ins. Co. v. Patterson*, 7 A.3d 454, 457 (Del. 2010) (applying the Restatement to the choice of law analysis).

[9] *Patterson*, 7 A.3d at 457.

a. The needs of the interstate and international systems;
b. The relevant policies of the forum;
c. The relevant policies of other interested states and the relative interests of those states in the determination of a particular issue;
d. The protection of justified expectations;
e. The basic policies underlying the particular field of law;
f. Certainty, predictability, and uniformity of result; and
g. Ease in the determination and application of the law to be applied.[10]

11. Additionally, the presiding court weighs the following four factors to determine which state has greater contacts with the dispute:

a. The place where the injury occurred;
b. The place where the conduct causing the injury occurred;
c. The domicile, residence, nationality, place of incorporation, and place of business of the parties; and
d. The place where the relationship, if any, between the parties is centered.[11]

12. In *State Farm Mut. Auto. Ins. Co. v. Patterson*,[12] the Delaware Supreme Court held "the law of the state where the injury occurred should apply unless, with respect to the particular issue, some other state has a more significant relationship" under the seven factors stated in Section 6.[13] In *Patterson*, plaintiff sued her insurance provider for uninsured motorist ("UM") benefits after suffering injuries from an automobile accident in New Jersey.[14] The insurance provider argued plaintiff was not entitled to UM benefits under Delaware law because the

[10] *Id.*
[11] *Id.*
[12] 7 A.3d 454 (Del. 2010).
[13] *Id.* at 457.
[14] *Id.* at 455.

accident occurred in New Jersey and therefore New Jersey law applied.[15] The Supreme Court held Delaware law applied because plaintiff's claims related to a vehicle registered in Delaware and insured by a Delaware policy.[16] The Supreme Court held that although the accident occurred in New Jersey, "Delaware has the most significant interest in applying its law where what is at stake is the right of the injured Delaware citizen to recover the full amount of his or her actual damages."[17] In other words, Delaware has a significant interest in ensuring its citizens are afforded the protections of Delaware insurance policies while driving in other states, which the Supreme Court concluded was a sufficiently significant relationship to overcome the general rule regarding the situs of the injury.[18]

13. Pennsylvania follows a similar standard and, in a case factually similar to the dispute here, the Pennsylvania Commonwealth Court held Pennsylvania had the most significant contacts to a dispute involving subrogation rights under Pennsylvania's Workers' Compensation Act.[19] In *Young v. Workers' Comp. Appeal Bd.*,[20] the employee-claimant received workers' compensation benefits from her employer for injuries resulting from an automobile accident with

---

[15] *Id.*
[16] *Id.* at 459.
[17] *Id.*
[18] *Id.* ("A Delaware citizen who is driving out of state does not have to travel far to encounter limitations imposed by (non-Delaware) local law on actual damages caused by a tortfeasor outside of Delaware.").
[19] 77 P.S. § 671.
[20] 88 A.3d 295 (Pa. Commw. Ct. 2014).

a Delaware driver.[21] The accident occurred in Delaware, but the workers' compensation benefits were paid under the Pennsylvania Workers' Compensation Act.[22] Claimant sued the Delaware driver and received $160,000 in a settlement agreement, without alerting her employer or asking the employer to compromise its workers' compensation lien.[23] Claimant's employer then brought a subrogation claim against claimant under Section 319 of the Pennsylvania Workers' Compensation Act.[24] The parties disputed whether Pennsylvania or Delaware law governed the employer's subrogation rights, with the employee arguing Delaware law should apply because the accident occurred in Delaware, and Delaware's law limited the employee's ability to introduce in her action against the third-party tortfeasor a claim for PIP-eligible medical expenses.

14. The *Young* Court concluded the most significant contact for choice of law purposes was the state whose workers' compensation law the parties utilized.[25] As to matters arising out of the workers' compensation relationship, the *Young* Court held the law of the state that regulated the employer's insurance policy should govern.[26] The Court reasoned that to allow a workers' compensation claim to be governed by multiple states' laws would "invite uncertainty and piecemeal

---

[21] *Young*, 88 A.3d at 297.
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.* at 301.
[26] *Id.* (quoting *Byard F. Brogan v. Workers' Comp. Appeal Bd.*, 637 A.2d 689 (Pa. Commw. Ct. 1994)) (internal quotation marks omitted).

8

litigation" over parties' workers' compensation rights.[27] The Court noted that although the accident occurred in Delaware, the dispute was not about the accident, but rather about the workers' compensation claim and the extent of the employer's subrogation rights.[28]

15.    The dispute about which state's law applies is important in this case because under Delaware law Selective could be entitled to recover from Philadelphia any PIP-eligible benefits that Gekht was precluded from claiming in her action against McKeever. Selective likely does not have a similar subrogation right under Pennsylvania law. The common thread in *Patterson* and *Young* is the principle that a state has a significant interest in ensuring that its own law governs resolution of disputes involving policies constructed under that state's statutory scheme. This principle ensures that disputes between parties will be governed by the rules to which the parties agreed when entering into their contractual relationship.

16.    Based on the facts alleged in the complaint, the parties' dispute plainly involves Pennsylvania's workers' compensation statutory scheme. As in *Young*, Gekht's workers' compensation policy with Selective is governed by Pennsylvania's Workers' Compensation Act. Additionally, Selective made workers' compensation payments under its policy with Gekht and therefore availed

---

[27] *Id.*
[28] *Id.*

itself of Pennsylvania law. Pennsylvania has a significant interest in ensuring claims under its Workers' Compensation Act are executed according to the provisions of its statute.

17. As in *Patterson*, Pennsylvania's significant interest in the integrity of its Workers' Compensation Act overcomes the presumption that the situs of the injury shall provide the governing law in a dispute. Accordingly, as Selective's claim presently is alleged, Pennsylvania law applies because Pennsylvania has the most significant contacts with the particular issue of Selective's subrogation rights.

**B. Leave to File an Amended Complaint and Selective's Promissory Estoppel argument.**

18. In an effort to defeat Philadelphia's motion to dismiss, Selective argued in its response brief that Philadelphia's motion should be denied on the basis of promissory estoppel. Without clearly stating as much, Selective appears to contend that, through promissory estoppel or otherwise, the parties agreed Delaware law would govern both Gekht's recovery and Selective's subrogation rights. In other words, Selective appears to be arguing that *Young* and *Patterson* do not apply because the parties agreed in connection with execution of the settlement agreement that Delaware law would govern their relationship.

19. In order to establish promissory estoppel, a party must demonstrate by clear and convincing evidence that:

10

(i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise.[29]

20. The facts Selective relies upon in support of its promissory estoppel argument are not contained in the complaint and therefore may not be considered in this procedural posture. Philadelphia's motion therefore is granted, but Selective has leave to file an amended complaint within the next 20 days. If Selective does not file an amended complaint within that time, this action shall be dismissed with prejudice.

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

Abigail M. LeGrow, Judge

Original to Prothonotary
cc:    Sarah B. Cole, Esquire
       William D. Rimmer, Esquire

---

[29] *Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000).

11